UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
_____ DIVISION
CASE NO.:_____

SABRIAN BRUTON, an individual,

     Plaintiff,

vs.

CITY OF HOMESTEAD, a municipal
subdivision of The State of Florida; EILEEN
CALVO, an individual; KEVIN CARVAJAL, an
individual; CHRISTIAN DEJOHN, an individual;
ENGELBERT GUZMAN, an individual;
CARLOS LAGO, an individual; and SHAVAR
SIMMONS, an individual.

     Defendants.

_____/

## **COMPLAINT**

COMES NOW, the Plaintiff, SABRIAN BRUTON (hereinafter "BRUTON"), by and through undersigned counsel, and hereby makes the following allegations against Defendants, CITY OF HOMESTEAD ("HOMESTEAD"), a municipal subdivision of the State of Florida; EILEEN CALVO ("CALVO"), an individual; KEVIN CARVAJAL ("CARVAJAL"), an individual; CHRISTIAN DEJOHN ("DEJOHN"), an individual; ENGELBERT GUZMAN ("GUZMAN"), an individual; CARLOS LAGO ("LAGO"), an individual; and SHAVAR SIMMONS ("SIMMONS"), an individual; collectively, the Defendants:

1

## INTRODUCTION

This civil action arises from an incident that occurred on or about July 6, 2018, when BRUTON was viciously brutalized during the course of an arrest. Defendants, CALVO, CARVAJAL, DEJOHN, GUZMAN, LAGO, and SIMMONS, employees of the Homestead Police Department ("HPD"), used unreasonable and excessive force in effecting the arrest following what began as a traffic stop for an, allegedly, improperly displayed license plate. BRUTON now brings federal constitutional claims and state tort claims for the deprivation of his protected rights by the Defendants, operating under the color of state law.

## PARTIES

1.      Plaintiff, BRUTON, is, at all times material, a citizen of the United States, a resident of Miami-Dade County, Florida and is *sui juris*.

2.      Defendant, HOMESTEAD, is a municipal subdivision of the State of Florida and is the legal entity responsible for itself.  This Defendant is also the employer of several other named Defendants and is the proper entity to be sued under 42 U.S.C. § 1983.

3.      Defendant, HOMESTEAD, both exercised and delegated its municipal final decision-making power to the Director of HPD and others.

4.      Defendant,  HOMESTEAD, is properly sued directly under 42 U.S.C. §1983 for its own and its delegated, deliberately indifferent unconstitutional decisions, policies, practice, habits, customs, usages, training and derelict supervision, ratification, acquiescence and intentional failures which were moving forces in the complaint of constitutional and statutory violations and resulting injuries.

5.      Defendant, HOMESTEAD, is also properly sued under 42 U.S.C. § 1983 for the challenged delegated final decisions of any final delegated decision-makers, with respect to the

hereinafter challenged deliberately indifferent policies, decisions, widespread habits, customs, usages and practices.

6.      Defendant, CALVO, is, at all times material, a citizen of the United States, a resident of Miami-Dade County, Florida, an employee of HPD, and is *sui juris*.

7.      Defendant, CARVAJAL, is, at all times material, a citizen of the United States, a resident of Miami-Dade County, Florida, an employee of HPD, and is *sui juris*.

8.      Defendant, DEJOHN, is, at all times material, a citizen of the United States, a resident of Miami-Dade County, Florida, an employee of HPD, and is *sui juris*.

9.      Defendant, GUZMAN, is, at all times material, a citizen of the United States, a resident of Miami-Dade County, Florida, an employee of HPD, and is *sui juris*.

10.     Defendant, LAGO, is, at all times material, a citizen of the United States, a resident of Miami-Dade County, Florida, an employee of HPD, and is *sui juris*.

11.     Defendant, SIMMONS, is, at all times material, a citizen of the United States, a resident of Miami-Dade County, Florida, an employee of HPD, and is *sui juris*.

12.     Defendants were at all times material hereto, "state actors" as defined in 42 U.S.C. § 1983.

13.     Defendants, CALVO, CARVAJAL, DEJOHN, GUZMAN, LAGO, and SIMMONS will, at times, be referred to as the Individual Defendants.

## **JURISDICTION AND VENUE**

14.     This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.

15.     Additionally, this Honorable Court has supplemental jurisdiction of the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the acts and omissions which give rise to this action occurred with this District.

17.     All conditions precedent, including, but not limited to, compliance with Florida Statutes § 768.28, have occurred, been satisfied or have been waived.

**<u>FACTS COMMON TO ALL COUNTS</u>**

18.     On or about July 6, 2018, Plaintiff, BRUTON, drove a black Buick Encore in the 700-BLK of SE 18th Avenue in Homestead, Florida.

19.     DEJOHN approached BRUTON's vehicle from behind and remained behind his vehicle for a few minutes until he decided to pass BRUTON's vehicle on the right-hand side.

20.     Despite DEJOHN's clear visibility of BRUTON's legible license plate while driving behind BRUTON's vehicle, with a distance of one hundred (100) feet or more, DEJOHN initiated a traffic stop for an alleged improper license plate cover.

21.     DEJOHN only observed a lack of visibility of BRUTON's license plate as he **passed** the vehicle on the right-hand side, placing DEJOHN at a short distance, less than one hundred (100) feet away from the license plate, contrary to the requirements of the Florida Statute DEJOHN used as probable cause to initiate the traffic stop.

22.     Nevertheless, BRUTON complied with the traffic stop and pulled his vehicle to the side of the road.

23.     Despite no indication of danger, DEJOHN approached BRUTON's window with his firearm drawn appearing agitated and upset.

24.     BRUTON, startled and confused, plead with DEJOHN not to shoot him. Fortunately, within seconds, CALVO arrived on scene and attempted to deescalate the situation.

25.     Once CALVO arrived, DEJOHN asked BRUTON for identifying information.

26.     Despite DEJOHN's refusal to allow BRUTON to retrieve his driver's license from the trunk of his vehicle, BRUTON provided the information requested by DEJOHN.

27.     Upon running BRUTON's information through his computer system, DEJOHN returned to BRUTON's vehicle, once again, agitated, and abruptly ordered BRUTON out of the vehicle.

28.     BRUTON, again confused and nervous, complied with DEJOHN's orders. However, upon exiting the vehicle, without reason, DEJOHN immediately drew his firearm and ordered BRUTON to the ground.

29.     Afraid of DEJOHN's increasingly agitated demeanor, BRUTON plead with DEJOHN not to shoot him and appealed to CALVO for assistance.

30.     CALVO, however, returned to her patrol vehicle, drew a Taser, and began moving her vehicle in BRUTON's direction.

31.     BRUTON fearing that CALVO might run him over, backed away, while repeatedly pleading with the officers not to shoot him.  It was apparent to BRUTON the officers intended to use deadly force.

32.     The officers pursued and BRUTON, fearing for his life, left the scene on foot.

33.     At this point, CARVAJAL, GUZMAN, LAGO, and SIMMONS arrived at the scene and assisted DEJOHN and CALVO, in pursuing BRUTON.

34.     BRUTON entered area of a residence owned by Ms. Sherri Lytle in the sideyard and upon reaching the backyard, he saw CARVAJAL enter the side yard. Relieved to see it was

not DEJOHN, BRUTON immediately laid down on his stomach with his arms and legs extended, showing he was not a threat to anyone, and he was not going to flee.

35.     CARVAJAL immediately handcuffed his hands and feet, and without reason or explanation, he began punching BRUTON's body with a closed hand fist. BRUTON began to beg for CARVAJAL to stop, and locked eyes with CALVO who was about one hundred (100) feet away from BRUTON and plead louder for CARVAJAL to stop.

36.     Within seconds, CARVAJAL was met with LAGO, SIMMONS, and GUZMAN. Upon their arrival, despite already having his hands and feet handcuffed, in concert, they began punching BRUTON with closed hand fists, until BRUTON received a brutal kick to the face, which left him unconscious.

37.     BRUTON regained consciousness when the officers were attempting to pick him up from the ground.

38.     Miami Dade Fire Rescue ("Fire Rescue") responded to the scene. Lieutenant NEWTON commanded Fire Rescue personnel not to take him to the hospital, despite the clear necessity for BRUTON to be seen by medical professionals.

39.     LAGO transported BRUTON to Homestead Police Department for booking. While on his way to HPD, BRUTON repeatedly asked LAGO to take him to the hospital complaining to LAGO about the need for medical attention.  LAGO yelled, "Shut the fuck up and be quiet – you're lucky I don't hit you again." LAGO completely disregarded BRUTON'S injuries and his cry for help.

40.     Despite continuous complaints about his need for medical attention, BRUTON was ignored for several hours, until Homestead Police Department officer, LESTER BROWN

("BROWN"), who was the then-receiving officer at HPD Station, finally transported BRUTON to Homestead Hospital.

41.     Upon arrival at Homestead Hospital, BROWN was informed by the attending physician that BRUTON's injuries were too severe and required treatment by a trauma surgeon immediately. BROWN was directed to Kendall Regional Medical Center ("Kendall Regional") and BRUTON was transported via ambulance to Kendall Regional.

42.     Upon arrival at Kendall Regional, BRUTON was diagnosed with left maxillary lateral/anterior wall, fracture of the left zygomatic arch, fracture of the left lateral orbit wall, and fracture to the left nasal bone.

43.     On July 9, 2018, BRUTON underwent surgical facial reconstruction, where he received a left sided open reduction internal fixation of left zygomaticomaxillary fractures. Plastic Surgeon, Dr. Rizal Lim ("Dr. Lim"), also found a left orbital floor fracture, where Dr. Lim conducted an exploration and neurolysis of the left intraorbital nerve with closed nasal reduction with internal stabilization by way of titanium plates and placed an internal splint for his nasal fracture.

44.     On July 10, 2018, BRUTON was released with necessary follow up appointments with a plastic surgeon and his primary care physician.

45.     On October 31, 2018, after reviewing BRUTON'S file, Miami-Dade Circuit Court Judge found BRUTON guilty as to only one (1) count of criminal mischief, despite the conglomeration of charges initially brought before the court.

46.     On September 27, 2019, after BRUTON filed his initial complaint in this matter, DEJOHN resigned from HPD after serving only about three (3) years as a police officer on September 30, 2019 due to his involvement in this matter.

47.     All of the above-described acts were done by the Individual Defendants intentionally, knowingly, willfully, wantonly, maliciously and/or recklessly in complete disregard for BRUTON's federally protected rights and were done pursuant to the preexisting and ongoing deliberately indifferent official custom, practice, decision, policy, training, and supervision of HOMESTEAD acting under color of state law.

48.     With deliberate indifference to the rights of citizens to be free from excessive force by law enforcement, HOMESTEAD has encouraged, tolerated, ratified and acquiesced to a dangerous environment of police brutality by:

a.     Failing to conduct sufficient training or supervision with respect to the constitutional limitations on the use of force;

b.     By failing to adequately punish unconstitutional uses of force;

c.     By tolerating the use of unconstitutional force;

d.     By ongoingly failing to properly or neutrally investigate citizen complaints of excessive force;

e.     By tolerating, encouraging and permitting collusive statements by involved officers in such situations; and,

f.     By failing to adequately provide medical attention.

49.     It is a longstanding widespread deliberately indifferent custom, habit, practice and/or policy of HOMESTEAD, and HPD to permit officers to use excessive force against individuals when such use is unnecessary and unjustified, as well as to fail to supervise and to train officers in the appropriate constitutional limits on the use of force, knowing that these members of law enforcement therefore pose a significate risk of injury to the public.

50.     As a direct and proximate result of the acts and omissions of the Defendants, Plaintiff was injured and damaged.

51.     The injuries, damages, and relief which BRUTON seeks from the Defendants, jointly and severally, under both state and federal law, include, but are not limited to:

    a.   Damages for physical pain and suffering in the past and future;

    b.   Damages for emotional pain and suffering in the past and future;

    c.   Damages for medical expenses in the past and future;

    d.   Aggravation of a preexisting condition;

    e.   Damages for loss of enjoyment of life in the past and future;

    f.    Damages for lost wages in the past;

    g.   Scars and disfigurement;

    h.   Damages for loss of earning capacity;

    i.    Punitive damages;

    j.    Pre and post judgment interest;

    k.   Attorney's fees; and

    l.    All other such relief, both general and specific, that this Court deems just and appropriate.

**COUNT I – EXCESSIVE FORCE IN VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS – DUE PROCESS (42 U.S.C. § 1983) AS TO DEFENDANTS, CARVAJAL, LAGO, GUZMAN, AND SIMMONS**

52.     Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through fifty-one (51) as though alleged originally herein.

53.     42 U.S.C. § 1983, in pertinent part, provides that:

> Every person, who under color of any statute, ordinance, regulation, custom  or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress …

54.     In committing the acts complained of herein, the Defendants acted jointly and under color of state law to deprive BRUTON of his clearly established constitutionally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution including, but not limited to:

a.     Freedom from unreasonable seizure;

b.     The right to be free from unreasonable searches;

c.     Freedom from the use of unreasonable, unjustified, and excessive force;

d.     Freedom from deprivation of liberty and property without due process of law;

e.     Freedom from summary punishment;

f.     Freedom from the prevention of officers from using excessive force; and

g.     Freedom from arbitrary governmental activity which shocks the conscience of a civilized society.

55.     In violating BRUTON's rights as set forth above and other rights that will be proven at trial, Defendants acted under color of state law and utilized unnecessary, unjustified, unreasonable, and excessive force.

56.     CARVAJAL'S, LAGO'S, GUZMAN'S, and SIMMONS' actions were not objectively reasonable under the circumstances based on the perspective of a reasonable officer at the scene.

57.     Further, the acts or conduct committed by the CARVAJAL, LAGO, GUZMAN, and SIMMONS against BRUTON occurred in the presence of each other, and in the presence of DEJOHN and CALVO, further violated BRUTON's constitutional rights by failing to intervene and prevent the violation of BRUTON's constitutional rights by fellow officers.

58.     All Individual Defendants knowingly and deliberately conspired to deprive BRUTON of his civil rights.

59.     The Individual Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of BRUTON's federally protected constitutional rights.

60.     They did so with shocking and willful indifference to BRUTON's rights and their conscious awareness that they would cause BRUTON severe physical and emotional injuries.

61.     The acts or omissions of the Individual Defendants were moving forces behind BRUTON's injuries.

62.     The acts or omissions of the Individual Defendants as described herein intentionally deprived BRUTON of his constitutional rights and caused him other damages.

63.     These Individual Defendants are not entitled to qualified immunity for the complained of conduct.

64.     The Defendants to this claim at all times material hereto were acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to BRUTON.

65.     As a direct and proximate result of the violation of his constitutional rights by the Defendants, BRUTON suffered general and special damages as alleged in this Complaint and is entitled to relief under 42 U.S.C. § 1983.

66.     The injuries and damages are permanent in nature, and BRUTON will suffer the losses and impairments in the future.

67.     In addition to compensatory, economic, consequential and special damages, BRUTON is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional right of BRUTON.

68.     BRUTON is entitled to recover reasonable attorneys' fees for the successful prosecution of this claim pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff demands judgment against CARVAJAL, LAGO, GUZMAN, and SIMMONS for compensatory and punitive damages, costs, reasonable attorney's fees pursuant to 42 U.S.C. §1988, and such other and further relief has the Court deems appropriate and demands trial by jury.

## COUNT II – FAILURE TO INTERVENE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS (42 U.S.C. § 1983) AS TO DEFENDANTS CALVO, CARVAJAL, DEJOHN, GUZMAN, LAGO, AND SIMMONS

69.     Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through fifty-one (51) as though alleged originally herein.

70.     42 U.S.C. § 1983, in pertinent part, provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress …

71.     In committing the acts complained of herein, the Individual Defendants acted jointly and under color of state law to deprive BRUTON of his clearly established constitutionally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution including, but not limited to:

a.      Freedom from unreasonable seizure;

b.      The right to be free from unreasonable searches;

c.      Freedom from deprivation of liberty and property without due process of law; and

d.      Freedom from arbitrary governmental activity which shocks the    conscience    of a civilized society.

72.     In violating BRUTON's rights, as set forth above and other rights that will be proven at trial, the Individual Defendants acted under color of state law.

73.     The acts or conduct committed by the Individual Defendants against BRUTON occurred in the presence of each other and said Defendants further violated BRUTON's constitutional rights by failing to intervene and prevent the violation of BRUTON's constitutional rights by fellow officers.

74.     The Individual Defendants knowingly and deliberately conspired to deprive BRUTON of his civil rights.

75.     The Individual Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of BRUTON's federally protected constitutional rights.

76.     They did so with shocking and willful indifference to BRUTON's rights and the conscious awareness that they would cause BRUTON severe injuries.

77.     The acts or omissions of the Individual Defendants were moving forces behind

BRUTON's injuries.

78.     The acts or omissions of the Individual Defendants as described herein intentionally deprived BRUTON of his constitutional rights and caused him other damages.

79.     The Individual Defendants are not entitled to qualified immunity for the complained of conduct.

80.     The Defendants to this claim at all times material hereto were acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to BRUTON.

81.     As a direct and proximate result of the violation of their constitutional rights by the Individual Defendants, BRUTON suffered general and special damages as alleged in this Complaint and is entitled to relief under 42 U.S.C. § 1983.

82.     The injuries and damages are permanent in nature, and BRUTON will suffer the losses and impairments in the future.

83.     In addition to compensatory, economic, consequential and special damages, BRUTON is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these Individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of BRUTON.

84.     BRUTON is entitled to recover reasonable attorneys' fees for the successful prosecution of this claim pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff demands judgment against the Individual Defendants for compensatory and punitive damages, costs, reasonable attorney's fees pursuant to 42 U.S.C. § 1988, and such other and further relief has the Court deems appropriate and demands trial by jury.

## COUNT III – DELIBERATELY INDIFFERENT POLICIES, PRACTICES, CUSTOMS, TRAINING, AND SUPERVISION IN VIOLATION OF THE FOURTH, FOURTEENTH AMENDMENTS AND IN VIOLATION OF 42 U.S.C. § 1983 AS TO DEFENDANT HOMESTEAD

85.     Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through fifty-one (51) as though alleged originally herein.

86.     42 U.S.C. § 1983, in pertinent part, provides that:

> Every person, who under color of any statute, ordinance, regulation, custom  or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress …

87.     Plaintiff in this action is a citizen of the United States and all of the Individual Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

88.     The Defendants to this claim at all times material hereto were acting under the color of state law.

89.     BRUTON had the following clearly established constitutionally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution at the time of the complaint conduct, including, but not limited to:

a.      Freedom from unreasonable seizure;

b.      The right to be free from unreasonable searches;

c.      Freedom from the use of unreasonable, unjustified and excessive force;

d.      Freedom from deprivation of liberty and property without due process of law;

e.      Freedom from summary punishment;

f.      Freedom from the prevention of officers from using excessive force; and

g.      Freedom from arbitrary governmental activity which shocks the conscience of a civilized society.

90.     HOMESTEAD knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

91.     The acts or omissions of HOMESTEAD, as described herein, deprived BRUTON of his constitutional and statutory rights and caused him other damages.

92.     The acts or omissions of the Individual Defendants as described herein, intentionally deprived BRUTON of his constitutional and statutory rights and caused him other damages.

93.     These Defendants are not entitled to qualified immunity for the complained of conduct.

94.     HOMESTEAD was at all times material hereto, policymakers for HPD, its agent, its agents and employees,  including supervising, overseeing,  training and establishing  policies, customs and procedures to confirm their conduct to the United States Constitution and Florida common law.

95.     At all times material hereto, HOMESTEAD was charged with the responsibility of adopting and implementing rules, policies, practices, customs and procedures for the proper and efficient maintenance, supervision, and control of HPD officers.  These duties include, but are not limited to:

a.      To create, adopt, and implement rules, regulations, practices, and procedures, toward hiring, supervising, and retaining law enforcement officers who do not have a propensity towards violence and the excessive use of force;

b.      To create, adopt, and implement rules and regulations, practices and procedures, for proper and efficient training of law enforcement officers in a way and to an extent necessary to ensure the utilization of a force continuum which  prevents  any

propensity towards violence and excessive force, and which ensures that the least amount of force would be utilized to maintain order and control;

c.      To create, adopt, and implement rules and regulations, practices and procedures for the proper and efficient supervision, control, discipline, and assignment of law enforcement officers in a way and to an extent necessary to ensure that citizens will not be subjected to excessive force or unnecessary force by the agents and employees of the HPD; and

d.      To implement rules, regulations, policies, practices, and procedures for the proper and efficient supervision, discipline, control, and investigation of law enforcement officers to reduce or eliminate instances of untruthfulness, including excessive force and instances of corroboration or ratification of untruthful accounts of excessive force events committed by fellow law enforcement officers.

96.      HOMESTEAD owed a legal duty to BRUTON to exercise reasonable care in hiring, training, and retaining safe and competent employees. BRUTON was in the zone of risk that was reasonably foreseeable to HOMESTEAD. HOMESTEAD breached that duty and the breach caused BRUTON's damages.

97.      HOMESTEAD, with deliberate indifference as to the possibility of BRUTON's injuries, failed to adequately train or otherwise supervise and direct HPD and its officers concerning the rights of the citizens they encounter in their duties, such that it is a well-settled policy, practice and custom for officers, including the Individual Defendants, to take extreme and reckless action against the citizens of the City of Homestead they encounter, including BRUTON, all in the name of self-defense, resulting in officers seriously injuring innocent citizens.

98.      HOMESTEAD was on notice, by this history of widespread abuse and of the need to correct the well-settled policy, practice and custom of its officers' extreme and reckless actions against the citizens of the City of Homestead. This need for more or different training has been so obvious and the inadequacy of the same, combined with HOMESTEAD's conscious choice not to act, has resulted in the violation of constitutional rights, including, but not limited to, the deprivation of BRUTON's civil rights.

99.     By limiting and/or failing to properly investigate, resulting in findings of no excessive force and the justification for HPD officers' extreme actions, and through allowing the well-settled policy, practice and custom of HPD officers' extreme and reckless actions against the citizens of the City of Homestead, HOMESTEAD has ratified, condoned, and consented to the HPD officers' unlawful conduct, specifically including the unlawful conduct of the Individual Defendants.

100.     HOMESTEAD was on notice of the history of failing to properly investigate (and thus address and correct) the extreme and wanton acts of its officers and failed to do so, leading to BRUTON's deprivation of civil rights.  The deprivation of civil rights, of which the circumstances described herein were a material part, together constituted a widespread pattern sufficient to notify HOMESTEAD and were obvious, flagrant, rampant, and of continued duration rather than isolated occurrences.

101.     Upon information and belief, HPD has a history of reports of excessive use of force incidents causing injuries and violations of citizens' rights, of which HOMESTEAD was aware.[1]

102.     Upon information and belief, HPD has a history of covering up the misconduct of its officers, of which HOMESTEAD was aware.[2]

---

[1] Edward B. Colby, 3 Homestead Police Charged in Connection with 2011 Incidents Outside Bar, https://www.nbcmiami.com/news/local/3-Homestead-Police-Charged-In-Connection-With-2011-Incidents-Outside-Bar-161172305.html (last visited September 22, 2020).

[2] Francisco Alvarado, Homestead police chief Al Rolle under probe in records destruction https://www.miamiherald.com/news/local/community/miami-dade/homestead/article1972975.html (last visited September 22, 2020).

103.     Upon information and belief, HOMESTEAD's failure to adequately address this history, and instead ratify and condone it, has led to additional instances of use of excessive force by its officers[3] and was a moving force and/or proximate cause of injuries to BRUTON.

104.     The actions committed by the Individual Defendants against BRUTON were proximately caused by the well-settled policies, customs, practices, and procedures of HOMESTEAD in failing to fulfill its duties as alleged herein, which was also the moving force behind BRUTON having his civil rights violated.

105.     The above-described well-settled customs and policies demonstrate a deliberate indifference on the part of HOMESTEAD, as the policymaker of HPD, to the constitutional rights of persons with the City of Homestead, and were a moving force or proximate cause of violations of BRUTON's rights alleged herein.   Despite knowing of the unconstitutional behavior and the need to take corrective action, HOMESTEAD has declined to do so.

106.     As a direct and proximate result of HOMESTEAD's actions and inactions, under color of state law, and in violation of 42 U.S.C. § 1983,  BRUTON  was  deprived  of  his constitutional rights to be secure in his person, free from unreasonable seizure and from the use of excessive force.

107.     As a direct and proximate result of HOMESTEAD's actions and inactions, BRUTON has suffered damages, including mental anguish, bodily injury, pain and suffering,

---

[3] Julia Jacobo, Miami-area police officer who pushed inmate head-first into concrete wall charged with battery, https://abcnews.go.com/US/miami-area-police-officer-pushed-inmate-head-concrete/story?id=64827715 (last visited September 22, 2020); Roy Ramos, Homestead police officer arrested this week previously fired for similar incident, https://abcnews.go.com/US/miami-area-police-officer-pushed-inmate-head-concrete/story?id=64827715 (last visited September 22, 2020)

disability, disfigurement, emotional distress, humiliation, embarrassment, loss of capacity of the enjoyment of life, and expense of hospitalization, medical and nursing care and treatment.

108.    The injuries and damages are permanent in nature, and BRUTON will suffer the losses and impairments in the future.

**WHEREFORE**, Plaintiff demands judgment against HOMESTEAD for compensatory damages, costs, reasonable attorney's fees pursuant to 42 U.S.C. § 1988, and such other and further relief has the Court deems appropriate and demands trial by jury.

### COUNT IV– BATTERY AS TO DEFENDANTS CARVAJAL, GUZMAN, LAGO, AND SIMMONS

109.    Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through fifty-one (51) as though alleged originally herein.

110.    On or about July 6, 2018, CARVAJAL, LAGO, GUZMAN, and SIMMONS intentionally and recklessly did acts which resulted in offensive contact with BRUTON's person, including, but not limited to: striking BRUTON in the face and various parts of body, and forcefully and excessively attempting to restrain his body, after handcuffs were placed on his wrist and ankles.

111.    CARVAJAL, LAGO, GUZMAN, and SIMMONS did such acts with the intent to cause harmful and offensive contact with the body of BRUTON.

112.    As a direct, legal and proximate result of such acts of CARVAJAL, LAGO, GUZMAN, and SIMMONS, BRUTON was injured about his face, body, and extremities, suffered physical pain and suffering, mental anguish, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of his injuries, suffered physical

handicap, lost wages, income lost in the past, and his working ability and earning capacity in the future has been impaired.

113.    The injuries and damages are permanent in nature, and BRUTON will suffer the losses and impairments in the future.

**WHEREFORE**, Plaintiff demands judgment against CARVAJAL, LAGO, GUZMAN, and SIMMONS for compensatory and punitive damages, costs, and such other and further relief has the Court deems appropriate and demands trial by jury.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues triable by jury.

Dated this 29th day of September 2020.

Respectfully submitted,

FRIEDLAND & ASSOCIATES
707 NE 3rd Avenue, Suite 201
Fort Lauderdale, Florida 33304
Telephone:  (954) 321-8810
Facsimile:  (954) 321-8995
pleadings@yourfightourbattle.com

By:  /s/ Lee Friedland
Lee Friedland, Esquire
Florida Bar No.: 991163